IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNIE TERRAZAS,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | Case No.: 1:09-cv-0864-JLT<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF ERNIE TERRAZAS AND AGAINST DEFENDANT MICHAEL J. ASTRUE |

**BACKGROUND**

Plaintiff Ernie Terrazas ("Plaintiff") seeks judicial review of an administrative decision denying his claim for and disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").

**FACTS AND PRIOR PROCEEDINGS[1]**

On December 23, 2005, Plaintiff filed an application for DIB under Title II of the Act in which he alleged that he suffered from a disability with a claimed onset date of October 4, 2005. See AR at 14, 117-18. After his application for benefits was denied by the agency, Plaintiff requested a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

hearing before an Administrative Law Judge ("ALJ").  On January 23, 2009, the ALJ issued a decision denying benefits.  Id. at 9-19.  Specifically, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  Id. at 19.  On March 16, 2009, the Appeals Council affirmed the ALJ's opinion and it became the decision of the Commissioner.  Id. at 1-4.

Hearing Testimony

At the hearing before the ALJ on December 2, 2008, Plaintiff testified that he worked at Valley Perforating for about nine years prior to his disability onset date of October 4, 2005.  AR at 26, 30.  In fact, with brief breaks to work for other companies, Plaintiff stated that he worked for Valley Perforating off-and-on for about 23 years.  Id. at 33.  He stated he worked for Valley Perforating in the positions of machinist and forklift operator.  Id.  He stated that machinist job required him to operate a "perforating" machine that punched holes in oil field pipes.  Id. at 31.  He said that this job required him to maintain the perforating machine also.  Id. at 32.  He estimated that he lifted objects weighing as much as 50 pounds while performing this job.  Id. at 31.

Plaintiff testified he worked for about one year for a company known as Triad.  AR at 32.  He stated that his job at Triad also involved operating a perforating machine and a forklift.  Id.  In addition, Plaintiff testified that years before he worked for about four months at Bakersfield Wellhead.  AR at 32.  He described this work as temporary and part-time.  Id. at 33.  He performed the same type of work at Bakersfield Wellhead as he performed at Triad and Valley Perforating.  Id.

Plaintiff testified that he stopped working after he fell off a ladder at work in October 2005.  See AR at 38.  He described having "severe pain all the time" since then.  Id. at 39.  He estimated the pain at 6 or 7 on an 10 point scale, but indicated that after he took his medications, the pain fell to a 3.  Id. at 40.

Plaintiff testified that he suffered both back and neck pain.  AR at 46.  He reported that the back and neck pain were about equal and both were severe.  Id.  Plaintiff stated also that he smoked for over 40 years.  Id. at 30.  He described having a collapsed lung and breathing trouble.  Id. Plaintiff also stated that he had three grand mal seizures several years earlier.  Id. at 29.

Plaintiff believed that if he took his medications he could work, but not for very long.  AR at 41.  He stated that he tried to perform office work but had trouble doing that job because he couldn't

stand or sit for extended periods.  Id.  He believed that his condition worsened after he went back to work.  Id. at 42.  He testified that he wished he could work but believed his health wouldn't permit it.  Id. at 49.

Plaintiff estimated that he could stand and/or walk about two hours in an eight-hour day but believed he would suffer a lot of pain if tried to do so.  AR at 42.  He believed that he could sit for about 30 minutes at once.  Id. at 29.  He estimated that he could walk about one to two blocks at a time.  Id.  He thought that he could lift 20- to 30-pounds.  Id.

Plaintiff testified that he had used a cane for the last five years.  AR at 34.  He believed he needed the cane to support his legs and used it "everywhere," even to get from room to room at home.  Id. at 35.  He stated that a doctor "prescribed" the cane.  Id.

Plaintiff testified that he saw doctors frequently because of his conditions.  AR at 28.  He estimated that he visited the doctor about once every two months.  Id.  In particular, he stated that he saw a doctor for "pain management" therapy, which involved, primarily, taking medication.  See id.  He reported that he took medications such as Tylenol, Codeine and Vicodin.  Id. at 37.  He stated that sometimes the medicine caused side effects like nausea and fatigue.  See id. at 38.

Plaintiff testified that his medications helped him tolerate the pain and allowed him to get a "little" sleep.  AR at 42.  Still, he believed that he could sleep for only 20 to 30 minutes at one time.  Id. at 43.  He stated that tranquilizers did not help much.  Id.  He indicated that he would try to obtain relief by lying down one to two hours a day and elevating his legs.  Id. at 44.  Plaintiff stated that he felt tired all the time.  Id. At 45.  He reported that he had high blood pressure and diabetes.  AR at 45.  He described feeling dizzy if he didn't eat right or take his medications.  Id.

Plaintiff testified that his wife assisted him with his personal grooming habits.  AR at 25.  In particular, he stated that she helped bathe him because he had difficulty standing.  Id.  Plaintiff characterized his ability to do household chores as "limited."  Id.  Plaintiff estimated that he watched about two hours of television a day.  AR at 25.  He stated that he read the newspaper for about 20 minutes each day.  Id.  He stated that sometimes he visited family and friends but didn't engage in any social activities like going to church or to the movies.  Id. at 26, 38.  Plaintiff stated that he had a driver's license and did drive.  Id. at 24.

1    Plaintiff acknowledged that in 2006, he was involved in an altercation with the police as a
2 result of being publicly intoxicated. AR at 47. He stated that this incident involved an argument
3 with a neighbor. Id. He testified that he had not had a drink in four or five years, although he did not
4 deny that the public intoxication incident occurred in 2006. Id. at 47-48.
5    A vocational expert ("VE"), Jose Chaparro, testified also. He categorized Plaintiff's past
6 work as a perforator as that of industrial machine operator and defined this work as skilled and
7 heavy. AR at 52. He described Plaintiff's work as a forklift operator as medium and semi-skilled.
8 Id.
9    In his first hypothetical, the ALJ described a person of Plaintiff's age, education and work
10 history, who was capable of lifting 20 pounds occasionally and 10 pounds frequently,
11 sitting/standing/walking for six hours in an eight-hour day, who was prohibited from continuous
12 repetitive neck motion and from holding his neck in a fixed position for prolonged periods,
13 precluded from overhead work and precluded from commercial driving and working at night or
14 around dangerous machinery. AR at 53. The VE opined that such a person could not perform any of
15 Plaintiff's past work. Id. However, the VE believed that the person could perform other work in the
16 regional and national economy, including that of airline security representative, cafeteria attendant
17 and fast food worker. Id. The VE characterized these jobs as light and unskilled. Id. In response to
18 a question from the ALJ, the VE stated that his testimony conformed to the requirements of the
19 Dictionary of Occupational Titles ("DOT"). Id. at 54.
20    In a second hypothetical, the ALJ described the same person in the first hypothetical but, in
21 addition, he added that the person needed to stand and sit at will and use a cane for walking and for
22 balance. AR at 54. The VE repeated that such a person could not perform Plaintiff's past work but
23 could perform other light and unskilled work like ticket seller and cashier. Id. The VE also believed
24 that this person could perform sedentary jobs. Id. at 55. As an example he mentioned the job of
25 "table worker." Id. Again, he affirmed that his opinion was in conformity with the DOT. Id.
26    Last, in a third hypothetical, the ALJ described a person of Plaintiff's age, education and
27 work history, but who was unable to complete an 8-hour day or 40-hour workweek. AR at 55. The
28 VE opined that such a person could perform no work. Id. at 55-56.

Relevant Medical Evidence

Dr. Paul Walsh examined Plaintiff on October 4, 2005. Plaintiff told him he fell from a ladder that morning and sustained injuries to his back and neck with ensuing pain. AR at 599. He characterized x-rays taken of Plaintiff's cervical, thoracic and lumbar spine as showing no fracture or acute bony abnormality. Id. During his examination, Dr. Walsh noted no acute distress and found Plaintiff to be alert and cooperative. Id. He noted diffuse tenderness in his neck with palpation over the cervical spine. Id. Based upon his examination and the x-rays, Dr. Walsh concluded that Plaintiff had acute cervical, thoracic and lumbar spine strain, status post fall. Id.

Dr. J.R. Grandhe examined Plaintiff on October 17, 2005. He noted Plaintiff's October 4 injury. AR at 366. Plaintiff complained of lower back and neck pain that was constant, burning and sharp, and worse in the morning. AR at 366-67. Plaintiff described his neck pain as radiating to the upper extremities and accompanied by numbness and tingling. Id. at 366. Plaintiff complained of headaches also. Id. at 367.

Dr. Grandhe noted that Plaintiff walked with a severe limp. AR at 368. Dr. Grandhe found that movement in Plaintiff's cervical spine was restricted with left radiculopathy. Id. He described the greater occipital nerve as severely tender and noted severe tenderness on the left facet joint. Id. Dr. Grandhe found that Plaintiff's lumbar spine was restricted with left radiculopathy and trigger point tenderness and found also that the sacroiliac joint was tender on the left. Id.

Dr. Grandhe found a severe, lower back, work-related injury with possible lumbar disc rupture causing total numbness in the left, lower extremities. AR at 369. He noted that Plaintiff's lumbar strain that was acute and chronic. Id. He believed that Plaintiff's left sacroiliac strain could lead to arthropathy. Id. Also, Dr. Grandhe determined that Plaintiff suffered from a severe cervical spine strain with possible acute left cervical facet joint arthropothy. Id. He believed Plaintiff's headaches were secondary to irritation of his bilateral occipital nerves or cervical trigger points. Id. Based on these findings, Dr. Grandhe recommended pain relief via medication and massage therapy, and an MRI and a CT scan of the cervical and lumbar spine. Id.

Dr. Vernon Sorenson examined Plaintiff in November 2005. He diagnosed Plaintiff with a neck sprain and authorized an MRI of his cervical and lumbar spine. AR at 397. He characterized

Plaintiff as totally temporarily disabled and prescribed Naprosyn, Tylenol and Soma for relief. Id.

Dr. John Grundzik of Kern Radiology Medical Group, Inc., performed an MRI on Plaintiff in December 2005. It revealed mild spondylosis at L4-5 and L5-S1 but no significant stenosis. AR at 379. As a result, Dr. Grundzik concluded that Plaintiff had minimal sporadic spondylotic changes but there was no evidence of acute focal disc herniation or stenosis. Id. at 380.

In follow-up exams, Dr. Sorenson noted the same cervical and lumbar spine strain and recorded slow progress. See AR at 398- 410, 412-18. However, following a January 13, 2006 examination, Dr. Sorenson concluded that Plaintiff needed no further evaluation and should be discharged from treatment and returned to "[f]ull duty with no restrictions." Id. at 411.

Dr. Arthur Harris examined Plaintiff in April 2006. Dr. Harris recounted Plaintiff's medical history including his October 4, 2005 injury. AR at 441. Plaintiff complained to Dr. Harris of radiating pain and limited range of motion in both the cervical and lumbar spine with headaches. Id. at 443. Dr. Harris noted that Plaintiff moved about without obvious discomfort but observed a "stuttering-type gait." AR at 444. Upon examination, he found the cervical spine was tender to palpation in the upper, mid and lower cervical paravertebral muscles and in both trapezial regions. Id. In addition, he noted increasing cervical pain with motion but found Plaintiff negative for Spurling and Adson maneuvers. Id.

Dr. Harris noted that Plaintiff's x-rays revealed mild degenerative changes in the cervical and lumbar spine with transitional lumbar vertebra having partial sacrization of the right L5 process. AR at 446. He concluded that Plaintiff sustained a contusion/straining injury to the cervical and lumbar spine with left lumbar radiculopathy. Id. He referred Plaintiff to electro diagnostic studies for further evaluation of his lumbar radiculopathy "as he has remained symptomatic in spite of the passage of time and his care to date." Id. at 447.

Dr. Harris examined Plaintiff again in June 2006. He characterized Plaintiff's condition as roughly the same as two months earlier. AR at 424-25. In addition, he noted a decreased sensation in Plaintiff's left lower extremity, "most notably in the L5 distribution." Id. at 425. Dr. Harris provided the same diagnosis of contusion/straining injury in both the cervical and lumbar spine with left lumbar radiculopathy. AR at 426. He believed that Plaintiff had received the maximum benefit

6

from treatment and that his condition was permanent and stationary. Id. at 427.

Dr. Harris opined that the condition of Plaintiff's cervical spine precluded work that involved continuous or repetitive cervical motion, holding his head in a fixed position for an extended period of time, or using his upper extremities at or above shoulder level. AR at 427-28. He believed that Plaintiff's spinal impairments precluded him from performing very heavy work. Id. at 428. Based on Plaintiff's descriptions of his prior work, Dr. Harris did not believe that he could return to that work. Id.

Dr. Jonathan Gurdin examined Plaintiff in May 2006. Again, Plaintiff complained of low back and neck pain with pain radiating to the left arm and leg. AR at 419. Dr. Gurdin reviewed the December 2005 MRI of the lumbar spine and found a partial sacrization of the L5 vertebra with mild spondylosis at L4-5 and L5-S1. AR at 419. He noted that the MRI of Plaintiff's cervical spine indicated minimal spondylotic change. Id.

Upon examination, Dr. Gurdin found the entire area of Plaintiff's neck to be "nontender" despite Plaintiff's complaints that it ached. AR at 420. Dr. Gurdin believed that Plaintiff's constant pain complaints "appeared to be an exaggerated pain response." Id. at 419. He noted that Plaintiff's only treatment involved taking medications like Norco and Tylenol #3. Id.

Dr. Gurdin described Plaintiff as walking slowly with a left-sided antalgic limp. AR at 420. He noted that Plaintiff was slow and deliberate getting on and off the exam table and when lying down. Id. As with the cervical spine, Dr. Gurdin found the lumbar spine nontender to palpation despite Plaintiff's complaints of aching. Id. He did note positive Waddell's sign with worsening of lower back pain with gentle axial compression and trunk rotation. Id.

Dr. Gurdin diagnosed Plaintiff with partial sacrization at the L5 vertebra, lumbar spondylosis, cervical spondylosis and possible vascular insufficiency in the left leg. AR at 421. However, he reiterated his belief that Plaintiff exaggerated his pain and stated that because of this exaggeration he was unable to accurately estimate his activity capacity. Id.

In June 2006, Dr. M.O. Nawar, a non-examining agency expert, completed a physical residual functional capacity ("RFC") evaluation of Plaintiff. Although Dr Nawar diagnosed back pain (AR at 450), he concluded that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently

and stand/walk/sit six hours each in an eight-hour day with no restrictions for pushing/pulling. Id. at 451. Also, he concluded that Plaintiff could climb, balance and stoop occasionally, and kneel, crouch and crawl frequently. Id. at 452. He found no manipulative, communicative, visual or environmental limitations. Id. at 452-53. He characterized his diagnosis and RFC findings as consistent with those of treating/examining sources. Id. at 454.

Records indicate that in September 2006, Plaintiff was treated in the emergency room due to an "altered level of consciousness/seizure." See AR at 522. The treating doctor's report found no acute injury but noted evidence of a craniotomy overlying the right temporal lobe. Id. He described Plaintiff's condition as status post previous right temporal lobe craniotomy with no intra cranial abnormalities currently detected. Id.

ALJ Findings

The ALJ evaluated Plaintiff pursuant to the customary five-step sequential evaluation. First, he determined that Plaintiff had not engaged in substantial gainful activity since his claimed onset date of October 4, 2005. AR at 14. Second, he found that Plaintiff had severe impairments caused by degenerative disc disease (neck and back) and seizure disorder. Id. Third, the ALJ determined that Plaintiff did not have an impairment, or a combination of impairments, that met or exceeded the level required under agency guidelines for presumed disability. Id.

Fourth, the ALJ determined that Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand and walk six hours out of an eight-hour day; with no continuous repetitive neck motions, and no holding of his neck in fixed positions for prolonged periods; no overhead work; no work at heights or around dangerous machinery; and no commercial driving. AR at 16. Based on his RFC assessment and the testimony of the VE, the ALJ found that Plaintiff could not perform his past relevant work, but concluded that Plaintiff retained the ability to perform other work in the national economy. Id. at 18. As a result, the ALJ determined that Plaintiff was not disabled as defined by the Act. Id. at 19.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. When reviewing the findings of fact, the Court must determine whether

8

the Commissioner's decision is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing the evidence that supports and detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court must uphold the determination that the claimant is not disabled if the Commissioner applied the proper legal standards and if the findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which include the five-step sequential disability evaluation process described above. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] As noted, applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) had medically determinable severe impairments (degenerative disc disease (neck and back) and seizure disorder); (3) did not have an impairment which met or equaled one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform his past relevant work; but (5) retained the RFC to perform other work related activities. AR at 14-18. The

---

[2] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

1  ALJ then determined that Plaintiff was not under a "disability" as defined in the Act. Id. at 19.

2  Plaintiff challenges the ALJ's determination at Step 5 of the sequential evaluation process, where an individual's ability to perform work is assessed based on his RFC. In particular, Plaintiff alleges that the ALJ failed to properly incorporate the findings of an examining physician in the hypothetical he presented to the VE and thus erred in relying on this hypothetical and the VE's opinion in concluding that he retained the ability to perform other work in the national economy. (Doc. 15 at 4-5).

## DISCUSSION

### 1. The ALJ's hypothetical to the VE was incomplete and remand is warranted

Plaintiff raises just one issue on appeal. He contends that the hypothetical the ALJ posed to the VE, and upon which he based his RFC finding, failed to include a limitation on reaching at shoulder level and, thus, failed to account for all of his functional limitations. (Doc. 15 at 4-5).

In concluding that Plaintiff could not perform his past work but could perform other work, the ALJ cited Dr. Harris's conclusion that Plaintiff's impairments prevented him from performing work that required "repetitive use of the upper extremities *at or above* shoulder level." AR at 18, 428 (emphasis added). In fact, the ALJ found Dr. Harris's opinion "persuasive and [gave] it great weight." Id. at 18. Nevertheless, in the hypothetical posed to the VE, and subsequently incorporated into his RFC finding, the ALJ included a restriction only for "overhead work." AR at 16, 53. Based on this hypothetical, the VE concluded that Plaintiff retained the ability to perform "light and unskilled" jobs like airline security representative, cafeteria attendant, and fast food worker. Id. at 53. The ALJ specifically cited the VE's opinion to support his conclusion that Plaintiff retained the ability to perform these jobs. Id. at 19.

Plaintiff contends that each of the jobs cited by the ALJ "require frequent to constant reaching" and argues that his failure to incorporate a restriction on shoulder level reaching rendered the hypothetical incomplete. As a result, he asserts that the ALJ's reliance on the VE's opinion was error and that remand is warranted to propound a proper hypothetical that "includes the limitation of no reaching 'at' shoulder level." (Doc. 15 at 5).

The Commissioner may carry his burden of showing an ability to do other work by eliciting

the testimony of a VE in response to a hypothetical that sets out all the limitations and restrictions of the claimant that are supported by the record.[3] Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). A hypothetical question posed to a VE must include all impairments supported by substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Reliance on a hypothetical that fails to include all accepted limitations is insufficient to carry the agency's burden of proving the ability to engage in alternative work. Andrews, 53 F.3d at 1044.

The issue of the sufficiency of the hypothetical posed to the VE and relied upon by the ALJ turns on whether there is a substantive difference between a restriction to use of the upper extremities for overhead work and a restriction to use of the upper extremities at shoulder level.[4] This question was addressed recently in Shafigi v. Astrue, 2009 WL 4267499 (C.D. Cal., Nov. 23, 2009). In Shafigi, the ALJ propounded a hypothetical to the VE that contained a limitation "for 'no repetitive, overhead reaching or push/pull." Id. at *3. However, in his decision, the ALJ expanded the restriction beyond the hypothetical posed to the VE and prohibited Shafigi "from all 'work at or above shoulder level.'" Id. The court concluded that,

> While the hypothetical includes work *above* shoulder level, it fails to account for work *at* shoulder level. As a result, the ALJ posed an incomplete hypothetical to the VE. Moreover, the jobs identified by the vocational expert require frequent or occasional reaching. There is no indication whether the reaching includes at or above shoulder level reaching.
>
> Based on the foregoing, the Court finds that the ALJ committed legal error by failing to pose a complete hypothetical to the VE to include a limitation for work *at shoulder level*. . . .

Id. (Emphasis added.)

Based on Shafigi, the Court concludes that there is a substantive difference between a restriction to overhead work and work at shoulder level. While the ALJ need not include restrictions not supported by substantial evidence in the record, see Magallanes v. Bowen, 881 F.2d 747, 756-57

---

[3] Because it is the Commissioner's burden to show that Plaintiff can perform other work, the argument that Plaintiff's attorney was obligated to include the "at shoulder level" restriction in the hypotheticals that the attorney posed, is unavailing. Andrews, 53 F.3d at 1043.

[4] Plaintiff continually characterizes the omitted restriction as one of "reaching" at shoulder level. (See Doc. 15 at 4-5). In actuality, Dr. Harris's restriction was broader, prohibiting repetitive "use" of the upper extremities at or above shoulder level. AR at 428. Thus, Dr. Harris's restriction may involve more than just reaching.

(9th Cir. 1989), here he accorded "great weight" to Dr. Harris's opinion, and specifically cited his preclusion of Plaintiff from performing work requiring repetitive use of his upper extremities *at* or above shoulder level.  AR at 18 (emphasis added).  As a result, this preclusion was accepted by the ALJ and constituted substantial evidence that should have been presented in the hypothetical posed to the VE.  Osenbrock, 240 F.3d at 1164-65 (holding that a hypothetical question posed to a VE must include all impairments supported by substantial evidence); see also Tonaypetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that an examining physician's opinion constitutes substantial evidence if based upon the physician's own independent examination of the claimant).

Plaintiff contends that the jobs listed by the VE (airline security representative, cafeteria attendant, and fast food worker) involve frequent-to-constant reaching.  Defendant does not dispute this fact and, because no limitation on repetitive use of the upper extremities at shoulder level was included in the hypothetical, the VE did not address the impact such a restriction might have on Plaintiff's ability to perform these jobs.[5]  Under these circumstances, the ALJ's failure to incorporate this restriction rendered the hypothetical incomplete.  As a result, his reliance on the VE's opinion to conclude that Plaintiff retained the ability to perform other work was error and warrants remand.[6] See Andrews, 53 F.3d at 1044; see also Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'")

2. Remand is appropriate in this case

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or

---

[5] Social Security Ruling ("SSR") 85-15 states that reaching, handling, fingering, and feeling "require progressively finer usage of the upper extremities to perform work." Id. at *7.  The ruling further notes that reaching and handling "are activities required in almost all jobs" and states that "[s]ignificant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." Id.  Because "[v]arying degrees of limitations would have different effects . . . a [vocational specialist] may be needed to determine the effects of the limitations." Id.

[6] In support of the ALJ's decision, Defendant argues that the VE testified that his opinion was consistent with the DOT.  However, the VE's opinion was predicated on a hypothetical that did not include a restriction on repetitive use of the upper extremities *at* shoulder level.  Therefore, the fact that the opinion was consistent with the DOT provides no assistance here.

to order immediate repayment of benefits is within the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3 1172, 1178 (9th Cir. 2000). When a court reverses an administrative agency determination, the proper course, except in rare instances, is to remand to the agency for additional investigation or explanation. <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004) (citing <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396, 1399 (9th Cir. 1988).

Because the issue of the ALJ's reliance on VE testimony based upon an incomplete hypothetical remains to be addressed upon remand, and because it is not clear that an award of benefits to Plaintiff should result after this issue is addressed, the Court will order the matter remanded.[7] <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (the decision to remand for further proceedings or simply award benefits is within the discretion of the court).

## **CONCLUSION**

Based on the foregoing, this matter is HEREBY REMANDED for further proceedings consistent with this decision. The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated: **July 20, 2010**                                        **/s/ Jennifer L. Thurston**
                                                                                UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff agrees that remand for further consideration by the Commissioner is appropriate. (Doc. 15 at 5, 6).